## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **(1) ABC IP, LLC, a Delaware limited liability company,** | ) ) ) | |
| **(2) RARE BREED TRIGGERS, INC., a Texas corporation,** | ) ) ) | |
| **and** | ) ) | CASE NO. _____ |
| **(3) RBTM LLC, a Wyoming limited liability company** | ) ) ) | **JURY TRIAL DEMANDED** |
| **Plaintiffs.** | ) ) ) | |
| **v.** | ) ) ) | |
| **(1) ROKC LLC, an Oklahoma limited liability company, d/b/a Rainier Arms** | ) ) ) ) | |
| **Defendant.** | ) | |

## COMPLAINT FOR PATENT AND TRADEMARK INFRINGEMENT

This is an action for patent and trademark infringement in which ABC IP LLC ("ABC"), Rare Breed Triggers, Inc. ("Rare Breed"), and RBTM LLC ("RBTM") (collectively, "Plaintiffs") accuse ROKC LLC d/b/a Rainier Arms ("Defendant") of infringing U.S. Patent Nos. 12,038,247, 12,031,784, 12,529,538, 12,578,159, and 12,636,403; infringing Plaintiffs' trademark rights; and engaging in unfair competition as follows:

## PARTIES

1.      ABC is a limited liability company organized under the laws of the State of Delaware with an address at 8 The Green, Suite A, Dover, Delaware 19901.

1

2.      Rare Breed is a Texas corporation having a place of business at 2710 Central Freeway, Suite 150-151, Wichita Falls, TX 76306.

3.      RBTM is a limited liability company organized under the laws of the State of Wyoming with an address at 1309 Coffeen Avenue, STE 1200, Sheridan, Wyoming 82801.

4.      Upon information and belief, ROKC LLC d/b/a Rainier Arms is a limited liability company organized under the laws of Oklahoma with an address of 3208 Cooke Way, Oklahoma City, OK 73179.

## JURISDICTION AND VENUE

5.      This is an action for patent infringement arising under 35 U.S.C. §§ 271(a)–(c), 281, and 284–85; trademark infringement; false designation of origin; and unfair competition under 15 U.S.C. §§ 1114 and 1125(a).

6.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1338, which directs that United States District Courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents and pursuant to 28 U.S.C. § 1331, which pertains to civil actions arising under the laws of the United States.

7.      Personal jurisdiction over Defendant is proper in this District because the Defendant resides in and has a regular and established place of business in this District.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1400(b). Defendant resides in or has committed acts of infringement and has a regular and established place of business in this District.

2

## BACKGROUND

9.      This lawsuit asserts (i) direct, contributory, and induced infringement of U.S. Patent Nos. 12,038,247 ("the '247 Patent"), 12,031,784 ("the '784 Patent"), 12,529,538 ("the '538 Patent"), 12,578,159 ("the '159 Patent"), and 12,636,403 ("the '403 Patent) (together, "the Asserted Patents"); and (ii) trademark infringement, false designation of origin, and unfair competition with regard to Plaintiffs' well-known FRT trademark.

10.     The '247 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024. Each and every claim of the '247 Patent is valid and enforceable. A true and correct copy of the '247 Patent is attached as Exhibit 1.

11.     The '784 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 9, 2024. Each and every claim of the '784 Patent is valid and enforceable. A true and correct copy of the '784 Patent is attached as Exhibit 2.

12.     The '538 Patent was lawfully and properly issued by the United States Patent and Trademark Office on January 20, 2026. Each and every claim of the '538 Patent is valid and enforceable. A true and correct copy of the '538 Patent is attached as Exhibit 3.

13.     The '159 Patent was lawfully and properly issued by the United States Patent and Trademark Office on March 17, 2026. Each and every claim of the '159 Patent is valid and enforceable. A true and correct copy of the '159 Patent is attached as Exhibit 4.

14.     The '403 Patent was lawfully and properly issued by the United States Patent and Trademark Office on May 26. 2026. Each and every claim of the '403 Patent is valid and enforceable. A true and correct copy of the '403 Patent is attached as Exhibit 5.

15.     ABC is the current owner by assignment of all right, title and interest in and to the Asserted Patents. These assignments have been recorded at the United States Patent and Trademark Office ("USPTO").

16.     RBTM is the owner of the trademark FRT® and variations thereof. Since at least 2020, the FRT® mark has been used by Plaintiff Rare Breed to identify a unique trigger for firearms, which has been a remarkably successful offering. As a result of the long-term and high-profile use, the FRT trademark has come to be uniquely identified with Rare Breed and a valuable identifier of Rare Breed's products. In addition to strong common law rights in the FRT® trademark, RBTM also owns the following federally registered trademarks and pending applications, including the right to enforce the marks against infringers:

| Mark | Goods | App. no. | Reg. no. | App. date | Reg. date |
|------|-------|----------|----------|-----------|-----------|
| FRT | triggers for firearms | 97248519 | 8187914 | 2022-02-01 | 2026-03-24 |
| FRT-15 | triggers for firearms | 97245949 | 7004418 | 2022-01-31 | 2023-03-21 |
| FRT-22 | triggers for firearms | 97248530 | 8232406 | 2022-02-01 | 2026-04-28 |
| FRT-47 | triggers for firearms | 97248528 | 8232405 | 2022-02-01 | 2026-04-28 |
| FRT-MR3 | triggers for firearms | 99714625 | | 2026-03-20 | |
| FRT-RD3 | triggers for firearms | 99714703 | | 2026-03-20 | |
| FRT-15L3 | triggers for firearms | 98715335 | 8225451 | 2024-08-24 | 2026-04-21 |

Together, Plaintiffs' common law rights in and federal trademark registrations and pending applications are referred to as the "FRT Marks."

4

17.    Rare Breed is the exclusive licensee of the Asserted Patents and the FRT Marks.

18.    Plaintiffs have complied with the requirements of 35 U.S.C. § 287 either because the Asserted Patents are not practiced by ABC or any licensee and/or because any licensee has been required to mark its product.

19.    Upon information and belief, Defendant has committed acts of direct, contributory, and induced patent infringement, which will be described in more detail below. These acts are in violation of 35 U.S.C. § 271 and should be considered willful.

20.    On July 17, 2025, a cease and desist demand letter was delivered to Defendant, informing it of the '247 Patent and expressly accusing its Atrius Development 3 Position Super Selektor Safety, War Hammer Super Safety, and other similar products of patent infringement.

## THE INVENTIONS

21.    A typical AR15-pattern firearm, for example, is considered a semiautomatic firearm. The operation of a *standard disconnector* AR-pattern trigger mechanism is commenced by the trigger member being pulled by the user. The trigger member releases the hammer from the trigger sear and allows the hammer to strike the firing pin. A portion of the propellant gas is used to begin the process of sending the bolt carrier to the rear of the firearm. The rearward movement of bolt carrier cocks the hammer on the disconnector and then the bolt is allowed to return forward into battery with a new round inserted into the chamber. While this is happening, in the standard AR-pattern semiautomatic trigger, the user can either continue to hold the trigger member in a pulled (i.e., fired) state or allow

5

the trigger to return to its reset state, in which the sear, rather than the disconnector, engages and holds the hammer in a cocked position. When the user reduces pressure on the trigger member to allow the trigger spring to reset the trigger member, the disconnector releases the hammer to engage the trigger sear.

22.   In the standard AR-pattern trigger assembly, the purpose of the disconnector is to hold the hammer in a cocked position until the trigger member is reset by a trigger spring when the user lets the trigger reset. The disconnector allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to manually reset the trigger rapidly enough so that the sear engages before the bolt carrier or bolt returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer to simply "follow" the bolt carrier as it returns to battery without firing a second round, leaving the hammer uncocked.

23.   In contrast, in what Plaintiffs have coined a "forced reset" trigger mechanism, cycling of the bolt carrier or bolt causes the trigger member to be mechanically moved to the reset position and hold the trigger member there until the bolt or bolt carrier is back in battery, when it is safe for the user to pull the trigger again, without the need for a disconnector.

24.   The '247 and '159 Patents provide a novel device for accelerating the firing sequence of any semiautomatic firearm, in contrast to a standard semiautomatic trigger or other prior art devices that allow an accelerated rate of semiautomatic firing. The device can be selected to operate in either a standard semiautomatic mode or a "forced reset"

semiautomatic mode and uses a cam, rotated by cycling of the action, to cause the trigger member to reset and prevent the trigger member from being pulled again until the action has returned to the in-battery position.

25.    The '784 Patent provides a device that works in a trigger system as an extended trigger member locking mechanism for use with a semi-automatic firearm that employs, in some embodiments, a "deflectable extension of the locking member that is actuated by forward movement of the bolt carrier," among other innovations as explicitly claimed. Certain inventions of the '784 Patent overcome the geometric limitations of prior art designs for use in multiple and varied semi-automatic firearm designs by allowing a locking member to deflect or fold separately from the body portion of the locking member when contacted by the forward portion of the bolt carrier as it cycles to the rear.

26.    The '538 Patent provides a safety mechanism for a firearm that employs a cam selector, a lever, and a trigger. The cam selector contains multiple recesses and is configured to operate between a first mode, a second mode, and a third mode. In the first mode, a portion of the trigger referred to as a first trigger tail portion is movable within the first recess. In the second mode, the first trigger tail portion is allowed to engage the second recess and be moved down by a cam portion of the second recess when the cam selector rotates. In the third mode, the cam selector is configured to prevent the trigger from being pulled.

27.    The '403 Patent describes and claims a similarly operating device with the additional feature that it can be selected to operate in either of two distinct modes: 1) standard disconnector semiautomatic mode and 2) "forced reset" semiautomatic mode.

7

28.     The claims of the patents define the scope of the patented inventions.

## THE INFRINGING DEVICES

29.     On information and belief, Defendant previously or is currently making, using, selling, and/or offering for sale products that embody the technology claimed in the Asserted Patents, including the following (collectively, the "Infringing Devices"):

## I.    The Super Safety

30.     On information and belief, Defendant previously or is currently making, using, selling, and/or offering for sale a (3-Position) "War Hammer Super Safety" ("the Super Safety"), which embodies the technology claimed in at least the '247, '784, '538, '159, and '403 Patents.

31.     On information and belief, Defendant previously or is currently making, using, selling, and/or offering for sale the Super Safety via the website https://www.rainierarms.com/, in multiple variants, including at least:

a. A partial kit, which includes at minimum the cam and cam lever components, and may further include one or more additional components—when these components are installed in combination with a standard AR-pattern hammer and disconnector, with standard springs, the combination creates the invention of the '247, '784, '538, '159, and '403 Patents—and/or;

b. A complete kit, which includes at minimum the cam and cam lever components and additional components (e.g., a standard AR-pattern hammer, disconnector, standard springs, and a modified trigger); and/or

8

c. <u>A complete kit preinstalled in a receiver and/or complete firearm</u>, which includes cam and cam lever components and additional components (e.g., a standard AR-pattern hammer, disconnector, standard springs, and a modified trigger) preinstalled in an AR-pattern receiver.

32.     Exemplary photographs are shown below:





33.    The Super Safety can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger. The user can switch between safe, standard semiautomatic with disconnector, and "forced reset" semiautomatic with cam modes by moving the safety selector laterally between positions.

## II.    The Atrius Selector

34.    On information and belief, Defendant previously or is currently making, using, selling, and/or offering for sale a (3-Position) "Atrius Development Group Forced Reset Selector" ("the Atrius Selector"), which embodies the technology claimed in at least the '247, '784, '159, and '403 Patents.

35.   On information and belief, Defendant previously or is currently making, using, selling, and/or offering for sale the Atrius Selector via the website https://www.rainierarms.com/, in multiple variants, including at least:

    a.   As a standalone product; and/or

    a.   In conjunction with separate trigger mechanism parts; and/or

    b.   Pre-installed in a receiver and/or complete firearm.

36.   Exemplary photographs are shown below:









37.     The Atrius Selector can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger. The user can switch between safe, standard semiautomatic with disconnector, and "forced reset" semiautomatic with cam modes by rotating the safety selector between positions.

## INFRINGEMENT OF THE FRT MARKS

38.     On information and belief, Defendant is distributing, advertising, and/or selling products that do not originate with Plaintiffs but that nonetheless bear or are promoted in association with the FRT Marks.

39.     Defendant is falsely associating its products with Plaintiffs' well-known FRT Marks.

40.    Defendant is advertising its products as "FRT" as shown at: https://www.rainierarms.com/catalogsearch/result/?q=FRT. Exemplary images are shown below:





41.    Despite Defendant's marketing, Defendant's products are **not** one of Plaintiffs' FRT products.

42.     Defendant's unauthorized use of the FRT Marks to identify and promote its products is likely to mislead consumers into falsely believing that Defendant's products are in fact Plaintiffs' products, or are endorsed by or associated with Plaintiffs.

43.     The only reason Defendant would use the FRT Marks in connection with its products is to trade on the goodwill Plaintiffs have developed in the FRT Marks, and thus Defendant's conduct is willful.

## COUNT I – INFRINGEMENT OF THE '247 PATENT

44.     Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

45.     In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '247 Patent, including but not limited to claim 15, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '247 Patent. Such unlicensed products include the Super Safety and Atrius Selector.

46.     On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '247 Patent, including but not limited to claim 15, literally and/or under the doctrine of equivalents.

47.     An exemplary comparison of the Super Safety, when assembled and used as intended, with claim 15 of the '247 Patent, is illustrated in the chart below:

16

| '247 Patent Claim 15 | The Super Safety |
|---|---|
| 15. A firearm trigger mechanism comprising: | When installed and used as directed, the Super Safety is part of a trigger mechanism and functions as a cam that in at least one mode, both causes the reset of the trigger and locks the trigger during the cycle of operation.<br><br><br><br>https://www.rainierarms.com/<br><br><br><br>**The Super Safety**<br><br>*See also*, Ex. 6, Super Safety 3D Printed Active Trigger System v4.4, ("Super Safety Guide") at 12 |
| a hammer having a sear catch and a hook for engaging a disconnector | The Super Safety (yellow) is installed in a fire control mechanism pocket of a receiver along with a hammer (red) that |

| '247 Patent Claim 15 | The Super Safety |
|---|---|
| and adapted to be mounted in a fire control mechanism pocket of a receiver | has a sear catch and a hook for engaging a disconnector (orange).<br><br>(Plaintiff-generated renderings of the Super Safety here and below) |
| to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | The hammer (red) pivots on a transverse hammer pivot axis between set and released positions, depicted below. The hammer is adapted to be pivoted rearward by rearward movement of a bolt carrier.<br><br>**Hammer Set Position** |

18

| '247 Patent Claim 15 | The Super Safety |
|---|---|
| |  **Hammer Released Position** |
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, | The Super Safety (yellow) is installed with a trigger member (brown) in the fire control mechanism pocket and the trigger member pivots on a transverse trigger member pivot axis between set and released positions. The trigger member (brown) has a sear. |

| | |
|---|---|
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear of the trigger member (brown) and sear catch of the hammer (red) are in engagement when the hammer and trigger member are in their set positions.<br><br>**Trigger Member Set Position** |
| and are out of engagement in said released positions of said hammer and trigger member, | The sear of the trigger member (brown) and sear catch of the hammer (red) are out of engagement in the released position.<br><br>**Trigger Member Released Position** |

| | |
|---|---|
| said disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, | The disconnector (orange) is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer (red).  **Disconnector Hook Engaged** |
| and a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, | The Super Safety has a cam with a cam lobe and lever that is adapted to be movably mounted in the fire control mechanism pocket. (*See* image above depicting Super Safety, shown in yellow, in fire control mechanism pocket)  **Super Safety Cam with Lobe and Lever** |

| | |
|---|---|
| said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position, | The cam is movable between a first position and a second position.<br><br><br><br>**Cam and Lobe First Position**<br><br>In the second position, the cam lobe mechanically moves the trigger member (brown) toward the set position when the cam is in the "forced reset" semi-automatic mode.<br><br><br><br>**Cam and Lobe Second Position** |

| | |
|---|---|
| whereupon in a standard semi-automatic mode, | During at least part of the cycle in the standard semi-automatic mode,<br> |
| said cam is in said first position, | . . . the cam is in the first position.<br> |
| rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, | Rearward movement of the bolt carrier causes rearward pivoting of the hammer (red) such that the disconnector (orange) hook catches the hammer hook.<br> |

| | |
|---|---|
| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery,  |
| at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | . . . at which time a user must manually release the trigger member (brown) to free said hammer (red) from the disconnector (orange) to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm.  |

24

| | |
|---|---|
| whereupon in a forced reset semi-automatic mode, | When in the "forced reset" semi-automatic mode,<br> |
| said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, | . . . the cam is in the second position during at least part of the cycle and mechanically moves the trigger member toward the set position. Rearward movement of the bolt carrier causes rearward pivoting of the hammer (red) such that the disconnector (orange) hook is prevented from catching the hammer hook.<br> |

| | |
|---|---|
| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery,  |
| at which time the user can pull said trigger member to fire the firearm. | . . . at which time the user can pull the trigger member (brown) to fire the firearm. |

48.     An exemplary comparison of the Atrius Selector, when assembled and used as intended, with claim 15 of the '247 Patent, is illustrated in the chart below:

| '247 Patent Claim 15 | The Atrius Selector |
|---|---|
| 15. A firearm trigger mechanism comprising: | When installed and used as directed, the Atrius Selector is part of a trigger mechanism and functions as a cam that in at least one mode, both causes the reset of the trigger and locks the trigger during the cycle of operation.<br><br>https://www.rainierarms.com/<br><br>**Atrius Selector** |
| a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver | The Atrius Selector (yellow) is installed in a fire control mechanism pocket of a receiver along with a hammer (red) that has a sear catch and a hook for engaging a disconnector (orange).<br><br>(Plaintiff-generated renderings of Atrius Selector here and below) |

| | |
|---|---|
| to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | The hammer (red) pivots on a transverse hammer pivot axis between set and released positions, depicted below. The hammer is adapted to be pivoted rearward by rearward movement of a bolt carrier.<br><br><br><br>**Hammer Set Position**<br><br>**Hammer Released Position** |

28

| | |
|---|---|
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, | The Atrius Selector (yellow) is installed with a trigger member (brown) in the fire control mechanism pocket that pivots on a transverse trigger member pivot axis between set and released positions and has a sear. The trigger member (brown) has a sear.<br> |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear of the trigger member (brown) and sear catch of the hammer (red) are in engagement when the hammer and trigger member are in their set positions.<br><br>**Trigger Member Set Position** |

| | |
|---|---|
| and are out of engagement in said released positions of said hammer and trigger member, | The sear of the trigger member (brown) and sear catch of the hammer (red) are out of engagement in the released position.  **Trigger Member Released Position** |
| said disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, | The disconnector (orange) is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer (red).  **Disconnector Hook Engaged** |

| | |
|---|---|
| and a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, | The Atrius Selector has a cam and lever that is adapted to be movably mounted in the fire control mechanism pocket. (*See* image above depicting Atrius Selector, shown in yellow, in fire control mechanism pocket)<br><br><br><br>**Atrius Selector Cam with Lobe and Lever** |
| said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position, | The cam is movable between a first position and a second position.<br><br><br><br>**Cam and Lobe First Position**<br><br>In the second position, the cam lobe mechanically moves the trigger member (brown) toward the set position when the cam is in the "forced reset" semi-automatic mode. |



**Cam and Lobe Second Position**

| whereupon in a standard semi-automatic mode, said cam is in said first position, | During at least part of the cycle in the standard semi-automatic mode, the cam is in the first position. |

| | |
|---|---|
| rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, | Rearward movement of the bolt carrier causes rearward pivoting of the hammer (red) such that the disconnector (orange) hook catches the hammer hook.  |
| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery,  |

33

| | |
|---|---|
| at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | . . . at this time a user must manually release the trigger member (brown) to free said hammer (red) from the disconnector (orange) to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm<br><br> |
| whereupon in a forced reset semi-automatic mode, | When in the "forced reset" semi-automatic mode,<br><br> |

| | |
|---|---|
| said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, | The cam is in the second position during at least part of the cycle and mechanically moves the trigger member toward the set position. Rearward movement of the bolt carrier causes rearward pivoting of the hammer (red) such that the disconnector (orange) hook is prevented from catching the hammer hook.<br><br> |
| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery,<br><br> |

| at which time the user can pull said trigger member to fire the firearm. | . . . at which time the user can pull said trigger member (brown) to fire the firearm.  |
|---|---|

49.     On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '247 patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the Super Safety and Atrius Selector.

50.     On information and belief, Defendant knows or should know that such activities induce others to directly infringe at least claim 15 of the '247 Patent.

51.     On information and belief, Defendant also contributes to the infringement of the '247 Patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or

importation by Defendant of the components of the Super Safety and Atrius Selector, such as the cam or cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the '247 Patent.

52. Defendant has engaged in egregious infringement behavior with knowledge of the '247 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the '247 Patent and that the '247 Patent is valid at least through the service of the July 2025 letter. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the '247 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the '247 Patent.

53. By its actions, Defendant has injured Plaintiffs and is liable to Plaintiffs for infringement of the '247 Patent pursuant to 35 U.S.C. § 271.

54. By its actions, Defendant's infringement of the '247 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

55. By its actions, Defendant's infringement of the '247 Patent has damaged and continues to damage Plaintiffs in an amount yet to be determined.

56. Defendant's infringement of the '247 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

57. Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

58. Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT II – INFRINGEMENT OF THE '784 PATENT

59. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

60. In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '784 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '784 patent. Such unlicensed products include the Super Safety and Atrius Selector.

61. On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '784 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents.

38

62.     An exemplary comparison of the Super Safety, when assembled and used as

intended, with claim 1 of the '784 Patent is illustrated in the chart below:

| Claim 1: Language | Infringing Device (Super Safety) |
|---|---|
| 1. In a forced reset trigger mechanism, an extended trigger member locking device, comprising: | When installed and used as directed, the Super Safety is part of a forced reset trigger mechanism and functions as an extended trigger member locking device. <br><br> <br><br> https://www.rainierarms.com/ <br><br> <br><br> **Super Safety** <br> Super Safety 3D Printed Active Trigger System v4.4, |

| Claim 1: Language | Infringing Device (Super Safety) |
|---|---|
| | Hoffman Tactical (July 19, 2023) ("Super Safety Guide") at 12<br><br><br><br>**Super Safety Installed**<br>(Plaintiff-generated renderings of Super Safety here and below; Locking member and bolt carrier shown here and below in section view for clarity)<br><br>"The Super Safety is a mechanism that actively resets the trigger of a firearm to allow the operator to fire again, quickly, and efficiently.  The Super Safety has been designed to operate with AR-15 pattern firearms that use a mil-spec bolt carrier and fire control group." Super Safety Guide at 1. |

| | |
|---|---|
| a locking member that is movable between a first position in which it locks a trigger against pulling movement | The Super Safety operates as a locking member and has a first position in which the Super Safety locks the trigger member against pulling movement.<br><br><br><br>**Locked First Position** |
| and a second position where it does not restrict movement of the trigger member, | The Super Safety is moveable from the first position to a second position where it does not restrict movement of the trigger member.<br><br><br><br>**Unlocked Second Position** |

| | |
|---|---|
| the locking member configured to be movably supported by a frame | The Super Safety is movably (pivotally about the axis depicted below) supported by a frame (the lower receiver).<br><br><br><br> |
| and including a generally upward extension portion configured to make actuating contact with a surface of the bolt carrier, | The Super Safety has an upward extending portion (lever arm) configured to make actuating contact with a surface of the bolt carrier.<br><br> |

| | |
|---|---|
| such actuating contact causing the locking member to move from the first position to the second position, | The actuating contact causes the locking member to move from the first position to the second position. **Unlocked Second Position** |
| the locking member having a body portion that is movably supported | The Super Safety has a body portion that is movably supported by the lower receiver. |
| and an upwardly extending deflectable portion that is separately movable relative to the body portion between an extended position | The Super Safety has an upwardly extending deflectable portion (lever arm). The dovetail connection is designed to allow separate movement of the lever arm relative to the body portion between one |

position (depicted in red) where it is extended and another position where it is deflected (depicted in green).



Below illustrates the upward extending deflectable portion's (lever arm) total separate travel with an overlay of the lever in both positions without the body portion moving.



"The dovetail joint does not immediately transfer torque from the lever to the cam. The lever pivots in the cam until the void is filled. Once the void is filled the hammer can transfer torque to the cam via the upper and lower contact surfaces and. Note that the

| | void, the lower contact surface, and the upper contact surface, are shown on arbitrary sides of the dovetail, these features may be on either side of the dovetail depending on which direction the lever is moving. The amount that the lever rotates in the dovetail before transferring torque to the cam is such that as the bolt carrier completes its forward movement, the cam rotates the neutral surface away from the cam follower and to a point where the cam follower begins to slide against the cam surface." (referenced numerals removed for clarity).    Super Safety Guide at 4. https://www.scribd.com/document/843484122/Super-Safety-Documentation |
|---|---|
| and a deflected position. | The lever is now shown deflected independent of the body.<br> |

63.    An exemplary comparison of the Atrius Selector, when assembled and used as intended, with claim 1 of the '784 Patent is illustrated in the chart below:

| '784 Patent Claim 1 | The Atrius Selector |
| --- | --- |
| 1. In a forced reset trigger mechanism, an extended trigger member locking device, comprising: | When installed and used as directed, the Atrius Selector is part of a "forced reset" trigger mechanism and functions as an extended trigger member locking device.<br><br><br><br>https://www.rainierarms.com/<br><br>**Atrius Selector**<br><br><br><br>**Atrius Selector Installed**<br>(Plaintiff-generated renderings of Atrius Selector here and below; Locking member and bolt carrier shown here and below in section view for clarity) |

46

| | |
|---|---|
| a locking member that is movable between a first position in which it locks a trigger against pulling movement | The Atrius Selector operates as a locking member and has a first position in which it locks the trigger member against pulling movement.<br><br><br><br>**Locked First Position** |
| and a second position where it does not restrict movement of the trigger member, | The Atrius Selector is moveable from the first position to a second position where it does not restrict movement of the trigger member.<br><br><br><br>**Unlocked Second Position** |

| | |
|---|---|
| the locking member configured to be movably supported by a frame | The Atrius Selector is movably (pivotally about the axis depicted below) supported by a frame (the lower receiver).  |
| and including a generally upward extension portion configured to make actuating contact with a surface of the bolt carrier, | The Atrius Selector has an upward extending portion (yellow lever arm) configured to make actuating contact with a surface of the bolt carrier.  |



The body portion (purple) has a track with holes that are lined up to correspond to the selectable modes (Fire/ Standard Semi-Automatic, "Forced Reset" Semi-Automatic) which are positively stopped by a detent (blue)



**Section View of Body Portion (purple), Lower Receiver (grey), and Detent (blue)**

Once installed, the body portion (purple) is movably supported by the lower receiver (grey) using the detent (blue).

49

| | |
|---|---|
| such actuating contact causing the locking member to move from the first position to the second position, | The actuation causes the locking member to move from the first position to the second position.<br><br>**Unlocked Second Position** |
| the locking member having a body portion that is movably supported | The Atrius Selector has a body portion (purple) that is movably supported by the lower receiver. |
| and an upwardly extending deflectable portion that is separately movable relative to the body portion between an extended position | The Atrius Selector has an upwardly extending deflectable portion (lever arm). The connection is designed to allow separate movement of the lever arm relative to the body portion between one position |

50

(depicted in red) where it is extended and another position where it is deflected (depicted in yellow).



Below illustrates the upward extending deflectable portion's (lever arm) total separate travel with an overlay of the lever in both positions without the body portion moving.

| | |
|---|---|
| and a deflected position. | The lever is now shown deflected independent of the body.<br> |

64.    On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '784 patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the Super Safety and Atrius Selector while selling products.

65.    On information and belief, Defendant knows or should know that such activities induce others to directly infringe at least claim 1 of the '784 Patent.

66.    On information and belief, Defendant also contributes to the infringement of the '784 Patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendant of the components of the Super Safety and Atrius Selector, such as the cam or cam lever arm. The components are not suitable for substantial noninfringing

use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the '784 Patent.

67.     Defendant has engaged in egregious infringement behavior with knowledge of the '784 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendant knows or should have known that its actions constituted and continue to constitute infringement of the '784 Patent and that the '784 Patent is valid at least through the service of this complaint. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the '784 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the '784 Patent.

68.     By its actions, Defendant has injured Plaintiffs and is liable to Plaintiffs for infringement of the '784 Patent pursuant to 35 U.S.C. § 271.

69.     By its actions, Defendant's infringement of the '784 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

70.     By its actions, Defendant's infringement of the '784 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

71.     Defendant's infringement of the '784 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

72.    Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

73.    Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT III — INFRINGEMENT OF THE '538 PATENT

74.    Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

75.    In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '538 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '538 patent. Such unlicensed products include the Super Safety.

76.    On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '538 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents.

77.    An exemplary comparison of the Super Safety, when assembled and used as intended, with claim 1 of the '538 Patent is illustrated in the chart below:

| '538 Patent Claim 1 | The Super Safety |
|---|---|
| 1. A safety mechanism for a firearm comprising: | The Super Safety is part of a trigger mechanism installed into a firearm receiver in place of a standard safety.<br><br><br><br>https://www.rainierarms.com/<br><br><br>(**Super Safety**)<br>Ex. 6, Super Safety 3D Printed Active Trigger System v4.4, Hoffman Tactical (July 19, 2023) ("Super Safety Guide") at 12. |

| '538 Patent Claim 1 | The Super Safety |
|---|---|
| | <br><br>**Super Safety Installed**<br><br>(Plaintiff-generated renderings of Super Safety here and below; cam selector and bolt carrier shown in section view for clarity) |
| a cam selector; | The Super Safety includes a dual mode cam selector that allows for selection of safe, active reset, and passive reset modes.<br><br><br>**Dual Mode Cam Selector**<br>Ex. 6, Super Safety Guide at 1 |

| '538 Patent Claim 1 | The Super Safety |
|---|---|
| |  |
| a lever; | The Super Safety has a lever (pink) extending upward from the cam selector. |
| a trigger; | The cam selector operates on a trigger. (brown) |

| '538 Patent Claim 1 | The Super Safety |
|---|---|
| the cam selector comprising a first end, a second end, a top side, and a bottom side; | The Super Safety dual mode cam selector has two ends, a top side, and a bottom side as illustrated below.<br><br> |
| the cam selector comprising a longitudinal slot positioned on the top side of the cam selector; | The Super Safety dual mode cam selector comprises a longitudinal slot that is positioned on the top side and extends along the cam selector.<br><br> |
| the lever comprising a proximal end and a distal end; | The Super Safety lever (pink) has a proximal end and a distal end, as illustrated below.<br><br> |

58

| '538 Patent Claim 1 | The Super Safety |
|---|---|
|  |  |
| the longitudinal slot being configured to receive the proximal end of the lever; | The longitudinal slot on the top side of the cam selector (yellow) is configured to receive the proximal end of the lever (pink).  Ex. 6, Super Safety Guide at 12 <br><br> **Super Safety Installed** |

| '538 Patent Claim 1 | The Super Safety |
|---|---|
| the cam selector further comprising a first recess and a second recess on the bottom side of the cam selector; | The Super Safety dual mode cam selector has a first recess and a second recess on the bottom side of the cam. |
| the trigger comprising a first trigger tail portion; | The Super Safety dual mode trigger has a first trigger tail portion, shown in the red box below.<br><br>Ex. 6, Super Safety Guide at 10. |

60

| '538 Patent Claim 1 | The Super Safety |
|---|---|
| | |
| the cam selector being configured to operate between a first mode, a second mode, and a third mode; | The Super Safety dual mode cam is operable in three modes: (1) passive reset (standard semi-automatic) (2) active reset, and (3) safe. Super Safety Guide at 1. |
| wherein the first mode of the cam selector is configured to allow the first trigger tail portion to be movable within the first recess, | The Super Safety dual mode cam selector is operable in standard semi-automatic mode, in which the first trigger tail aligns with the first recess of the cam.<br><br><br><br>**Standard Semi-Automatic Mode**<br><br>When the cam selector is in the first mode, the first trigger tail portion is movable within the first recess of the cam. |

| '538 Patent Claim 1 | The Super Safety |
|---|---|
| |  **Super Safety Installed** **Super Safety Installed, Trigger Pulled, Lever and Cam Rotated** |

| '538 Patent Claim 1 | The Super Safety |
|---|---|
| wherein the second mode of the cam selector is configured to allow the first trigger tail portion to engage the second recess | The Super Safety dual mode cam selector is operable in active reset mode, in which the first trigger tail aligns with the second recess of the cam.<br><br><br><br>**Active Reset Mode** |
| and be moved down by a cam portion of the second recess when the cam selector rotates, | In the second mode, when the cam is rotated by the lever, the cam selector portion of the second recess moves the first trigger tail portion down.<br><br><br><br>**Super Safety Installed, Trigger Pulled** |

| '538 Patent Claim 1 | The Super Safety |
|---|---|
| |  **Super Safety Installed, Lever and Cam Rotated** |
| and wherein the third mode of the cam selector is configured to prevent the trigger from being pulled. | The Super Safety dual mode cam is operable in safe mode, in which the first trigger tail portion does not align with a recess in the cam. The trigger is not movable within a recess of the cam, and the cam therefore prevents the trigger from being pulled. |

| '538 Patent Claim 1 | The Super Safety |
|---|---|
|  |  |

78.     On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '538 patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the Super Safety while selling products.

79.     On information and belief, Defendant knows or should know that such activities induce others to directly infringe at least claim 1 of the '538 Patent.

80.     On information and belief, Defendant also contributes to the infringement of the '538 Patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendant of the components of the Super Safety, such as the cam or cam lever arm. The components are not suitable for substantial noninfringing use as they are

specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the '538 Patent.

81.     Defendant has engaged in egregious infringement behavior with knowledge of the '538 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the '538 Patent and that the '538 Patent is valid at least through the service of this complaint. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the '538 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the '538 Patent.

82.     By its actions, Defendant has injured Plaintiffs and is liable to Plaintiffs for infringement of the '538 Patent pursuant to 35 U.S.C. § 271.

83.     By its actions, Defendant's infringement of the '538 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

84.     By its actions, Defendant's infringement of the '538 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

85.     Defendant's infringement of the '538 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

66

86.     Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

87.     Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT IV — INFRINGEMENT OF THE '159 PATENT

88.     Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

89.     In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '159 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '159 patent. Such unlicensed products include the Super Safety and Atrius Selector.

90.     On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '159 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents.

91.     An exemplary comparison of the Super Safety, when assembled and used as intended, with claim 1 of the '159 Patent is illustrated in the chart below:

67

| '159 Patent Claim 1 | The Super Safety |
|---|---|
| 1. A firearm trigger mechanism for a firearm having a fire control mechanism pocket and a reciprocating bolt means, the trigger mechanism operable in a first, standard semi-automatic mode and in a second, forced reset semi-automatic mode, the mechanism comprising: | When installed and used as directed, the Super Safety is part of a trigger mechanism that uses a bolt means. With the Super Safety installed, the trigger mechanism operates in a standard semi-automatic mode and a "forced reset" semi-automatic mode <br><br>https://www.rainierarms.com/ <br><br>**Super Safety**<br><br>Super Safety 3D Printed Active Trigger System v4.4, Hoffman Tactical (July 19, 2023) ("Super Safety Guide") at 12 |

| '159 Patent Claim 1 | The Super Safety |
|---|---|
| |  |
| a hammer having a sear surface and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver | The Super Safety (yellow) is installed in a fire control mechanism pocket of a receiver along with a hammer (red) that has a sear surface and a hook for engaging a disconnector (orange).<br><br>**Super Safety** (**Installed**) |

| | |
|---|---|
| to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt means, | The hammer (red) pivots on a transverse hammer pivot axis between set and released positions, depicted below. The hammer is adapted to be pivoted rearward by rearward movement of a bolt means.  **Hammer Set Position**  **Hammer Released Position** |

| a trigger member having a trigger sear surface and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis | The Super Safety (yellow) is installed with a trigger member (brown) in the fire control mechanism pocket and the trigger member pivots on a transverse trigger member pivot axis between set and released positions. The trigger member has a sear surface. |
|---|---|
| between set and<br><br><br><br>released positions, | <br>**Trigger Member Set Position**<br><br>**Trigger Member Released Position** |

| | |
|---|---|
| wherein the trigger member sear surface and hammer sear surface are in engagement in the set positions of the hammer and trigger member | The sear surface of the trigger member (brown) and sear surface of the hammer (red) are in engagement when the hammer and trigger member are in their set positions.<br><br><br><br>**Trigger Member and Hammer Member Set Position** |
| and are out of engagement in the released positions of the hammer and trigger member, | The sear surface of the trigger member (brown) and sear catch surface of the hammer (red) are out of engagement in the released position.<br><br><br><br>**Trigger Member and Hammer Member Released Positions** |

| | |
|---|---|
| the disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and | The disconnector (orange) is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer (red).<br><br><br><br>**Disconnector Hook Engaged** |
| a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, | The Super Safety has a cam with a cam lobe and lever that is adapted to be movably mounted in the fire control mechanism pocket. (*See* image above depicting Super Safety, shown in yellow, in fire control mechanism pocket)<br><br><br><br>**Super Safety Cam with Lobe and Lever** |

| | |
|---|---|
| the cam being movable between a first position and a second position, in the second position the cam lobe forces the trigger member toward the set position, | The cam is movable between a first position and a second position.  **Cam and Lobe First Position** In the second position, the cam lobe mechanically moves the trigger member (brown) toward the set position when the cam is in the "forced reset" semi-automatic mode.  **Cam and Lobe Second Position** |

| | |
|---|---|
| whereupon in the first mode, | While in the first (standard semi-automatic) mode,  |
| rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, | Rearward movement of the bolt means causes rearward pivoting of the hammer (red) such that the disconnector (orange) hook catches the hammer hook.<br><br>**Disconnector Hook Catches the Hammer** |

| | |
|---|---|
| and thereafter the bolt means moves forward into battery, | Thereafter, the bolt means moves forward into battery,  **Pressure on Trigger Member Prevents Reset** |

| | |
|---|---|
| at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm, and | at which time a user must manually reduce pressure on the trigger member (brown) to free the hammer (red) from the disconnector (orange) to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm.<br><br><br><br>**Reduced Pressure on Trigger Member Allows Reset** |
| whereupon in a second mode, | When in the second ("forced reset" semi-automatic) mode,<br><br> |

| | |
|---|---|
| rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook is prevented from holding the hammer, | Rearward movement of the bolt means causes rearward pivoting of the hammer (red) and the cam to mechanically move the trigger member toward the reset position such that the disconnector (orange) hook is prevented from holding the hammer hook.  |
| and thereafter the bolt means moves forward into battery, | Thereafter, the bolt means moves forward into battery and the hammer moves to its reset position,  |

| | |
|---|---|
| at which time the user can pull the trigger member to fire the firearm. | . . . at which time the user can pull the trigger member (brown) to fire the firearm without having to first release pressure on the trigger member.<br><br> |

92.    An exemplary comparison of the Atrius Selector, when assembled and used as intended, with claim 1 of the '159 Patent is illustrated in the chart below:

| '159 Patent Claim 1 | The Atrius Selector |
|---|---|
| 1. A firearm trigger mechanism for a firearm having a fire control mechanism pocket and a reciprocating bolt means, the trigger mechanism operable in a first, standard semi-automatic mode and in a second, forced reset semi-automatic mode, the mechanism comprising: | When installed and used as directed, the Atrius Selector is part of a firearm trigger mechanism that uses a bolt means. With the Atrius Selector installed, the trigger mechanism operates in a standard semi-automatic mode and a "forced reset" semi-automatic mode<br><br>https://www.rainierarms.com/<br><br>**Atrius Selector** |

| '159 Patent Claim 1 | The Atrius Selector |
|---|---|
| | **Atrius Selector** (**Installed**)<br><br>(Plaintiff-generated renderings of the Atrius Selector here and below) |
| a hammer having a sear surface and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver | The Atrius Selector (yellow) is installed in a fire control mechanism pocket of a receiver along with a hammer (red) that has a sear surface and a hook for engaging a disconnector (orange).<br><br>Hammer sear surface<br>Trigger member sear surface<br><br>**Atrius Selector (Installed**) |

| | |
|---|---|
| to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt means, | The hammer (red) pivots on a transverse hammer pivot axis between set and released positions, depicted below. The hammer is adapted to be pivoted rearward by rearward movement of a bolt means.<br><br><br>**Hammer Set Position**<br><br><br>**Hammer Released Position** |

| | |
|---|---|
| a trigger member having a trigger sear surface and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis<br><br>between set and<br><br><br><br><br><br><br><br><br><br>released positions, | The Atrius Selector (yellow) is installed with a trigger member (brown) in the fire control mechanism pocket and the trigger member pivots on a transverse trigger member pivot axis between set and released positions. The trigger member has a sear surface.<br><br><br><br>**Trigger Member Set Position**<br><br><br><br>**Trigger Member Released Position** |

| | |
|---|---|
| wherein the trigger member sear surface and hammer sear surface are in engagement in the set positions of the hammer and trigger member | The sear surface of the trigger member (brown) and sear surface of the hammer (red) are in engagement when the hammer and trigger member are in their set positions.  **Trigger Member and Hammer Member Set Position** |
| and are out of engagement in the released positions of the hammer and trigger member, | The sear surface of the trigger member (brown) and sear catch surface of the hammer (red) are out of engagement in the released position.  **Trigger Member and Hammer Member Released Positions** |

| | |
|---|---|
| the disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and | The disconnector (orange) is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer (red).<br><br><br><br>**Disconnector Hook Engaged** |
| a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, | The Atrius Selector has a cam with a cam lobe and lever that is adapted to be movably mounted in the fire control mechanism pocket. (*See* image above depicting Atrius Selector, shown in yellow, in fire control mechanism pocket)<br><br><br><br>**Atrius Selector Cam with Lobe and Lever** |

| | |
|---|---|
| the cam being movable between a first position and a second position, in the second position the cam lobe forces the trigger member toward the set position, | The cam is movable between a first position and a second position.  **Cam and Lobe First Position** In the second position, the cam lobe mechanically moves the trigger member (brown) toward the set position when the cam is in the "forced reset" semi-automatic mode.  **Cam and Lobe Second Position** |

| | |
|---|---|
| whereupon in the first mode, | While in the first (standard semi-automatic) mode,  **Cam in the First (Semi-Automatic) Mode** |
| rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, | Rearward movement of the bolt means causes rearward pivoting of the hammer (red) such that the disconnector (orange) hook catches the hammer hook.  **Disconnector Hook Catches the Hammer** |

86

| | |
|---|---|
| and thereafter the bolt means moves forward into battery, | Thereafter, the bolt means moves forward into battery,  **Pressure on Trigger Member Prevents Reset** |

| | |
|---|---|
| at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm, and | . . . at which time a user must manually reduce pressure on the trigger member (brown) to free the hammer (red) from the disconnector (orange) to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm.<br><br><br><br>**Reduced Pressure on Trigger Member Allows Reset** |
| whereupon in a second mode, | When in the second ("forced reset" semi-automatic) mode,<br><br><br><br>**Cam in the Second** ("**Forced Reset" Semi-Automatic**) **Mode** |

88

| | |
|---|---|
| rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook is prevented from holding the hammer, | Rearward movement of the bolt means causes rearward pivoting of the hammer (red) and the cam to mechanically move the trigger member toward the reset position such that the disconnector (orange) hook is prevented from holding the hammer hook.<br> |
| and thereafter the bolt means moves forward into battery, | Thereafter, the bolt means moves forward into battery and the hammer moves to its reset position,<br> |

| | |
|---|---|
| at which time the user can pull the trigger member to fire the firearm. | . . . at which time the user can pull the trigger member (brown) to fire the firearm without having to first release pressure on the trigger member.<br><br> |

93.     On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '159 patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the Super Safety and Atrius Selector while selling products.

94.     On information and belief, Defendant knows or should know that such activities induce others to directly infringe at least claim 1 of the '159 Patent.

95.     On information and belief, Defendant also contributes to the infringement of the '159 Patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendant of the components of the Super Safety and Atrius Selector, such

as the cam or cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the '159 Patent.

96.    Defendant has engaged in egregious infringement behavior with knowledge of the '159 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the '159 Patent and that the '159 Patent is valid at least through the service of this complaint. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the '159 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the '159 Patent.

97.    By its actions, Defendant has injured Plaintiffs and are liable to Plaintiffs for infringement of the '159 Patent pursuant to 35 U.S.C. § 271.

98.    By its actions, Defendant's infringement of the '159 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

99.    By its actions, Defendant's infringement of the '159 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

100.    Defendant's infringement of the '159 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

101.    Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

102.    Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief, including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT V — INFRINGEMENT OF THE '403 PATENT

103.    Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

104.    In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '403 patent, including but not limited to claim 38, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '403 patent. Such unlicensed products include the Infringing Devices.

105.    On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '403 patent, including but not limited to claim 38, literally and/or under the doctrine of equivalents.

92

106.    An exemplary comparison of the Super Safety, when assembled and used as intended, with claim 38 of the '403 patent is illustrated in the chart below:

| '403 Patent Claim 38 | The Super Safety |
|---|---|
| 38. A forced reset trigger mechanism, comprising: | When installed and used as directed, the Super Safety is part of a trigger mechanism. <br><br> <br><br> https://www.rainierarms.com/ <br><br> <br><br> **Super Safety** <br><br> Super Safety 3D Printed Active Trigger System v4.4, Hoffman Tactical (July 19, 2023) ("Super Safety Guide") at 12 |

| '403 Patent Claim 38 | The Super Safety |
|---|---|
| a hammer having a hammer hook and adapted to pivot on a transverse hammer pivot axis; | The Super Safety (yellow) is installed in a fire control mechanism pocket along with a hammer (red) that has a hammer hook and pivots on a transverse axis.<br><br><br><br>**Super Safety (Installed)**<br><br>(Plaintiff-generated renderings of Super Safety here and below) |
| a disconnector having a disconnector hook and adapted to pivot on a transverse disconnector pivot axis;<br><br>a trigger member; and | The Super Safety is installed along with a disconnector (orange) which has a disconnector hook and pivots on a transverse disconnector pivot axis, and a trigger member (brown)<br><br><br><br>**Disconnector and Trigger Member** |

| a safety selector adapted to be movable between a standard semi-automatic position and a forced reset semi-automatic position, | The Super Safety is a safety selector adapted to be movable between a standard semi-automatic position,  **Super Safety (installed) in Standard Semi-Automatic Position** . . . and a "forced reset" semi-automatic position,  **Super Safety (installed) in "Forced Reset" Semi-Automatic Position** |
| --- | --- |

| | |
|---|---|
| wherein when the safety selector is in the standard semi-automatic position and the trigger member is rearwardly actuated, | When safety selector is in the standard semi-automatic position the trigger member (brown) is rearwardly actuated.  |
| and after the hammer pivots rearward to a position where the hammer hook is past the disconnector hook, | The hammer (red) pivots rearward to a position where the hammer hook is past the disconnector hook (orange),  **Hammer Hook is Past Disconnector Hook** |

| | |
|---|---|
| rearward pressure on the trigger member must be reduced to permit the trigger member to then be actuated to fire a firearm. | Rearward pressure on the trigger member (brown) must be reduced to permit the trigger member to then be actuated to fire a firearm.<br><br><br><br>**Pressure Must be** red**uced** |

107.    An exemplary comparison of the Atrius Selector, when assembled and used as intended, with claim 38 of the '403 Patent is illustrated in the chart below:

| '403 Patent Claim 38 | The Atrius Selector |
|---|---|
| 38. A forced reset trigger mechanism, comprising: | When installed and used as directed, the Atrius Selector is part of a trigger mechanism.<br><br>https://www.rainierarms.com/<br><br>**Atrius Selector** |

| '403 Patent Claim 38 | The Atrius Selector |
|---|---|
| a hammer having a hammer hook and adapted to pivot on a transverse hammer pivot axis; | The Atrius Selector (yellow) is installed in a fire control mechanism pocket along with a hammer (red) that has a hammer hook and pivots on a transverse axis. <br><br> **Atrius Selector** (**Installed**) <br><br> (Plaintiff-generated renderings of Atrius Selector here and below) |
| a disconnector having a disconnector hook and adapted to pivot on a transverse disconnector pivot axis; <br><br> a trigger member; and | The Atrius Selector is installed along with a disconnector (orange) which has a disconnector hook and pivots on a transverse disconnector pivot axis, and a trigger member (brown). <br><br> **Disconnector and Trigger Member** |

98

| '403 Patent Claim 38 | The Atrius Selector |
|---|---|
| a safety selector adapted to be movable between a standard semi-automatic position | The Atrius Selector is a safety selector adapted to be movable between a standard semi-automatic position,<br><br><br><br>**Atrius Selector (installed) in Standard Semi-Automatic Position** |
| and a forced reset semi-automatic position, | . . . and a "forced reset" semi-automatic position.<br><br><br><br>**Atrius Selector (installed) in "Forced Reset" Semi-Automatic Position** |

| '403 Patent Claim 38 | The Atrius Selector |
|---|---|
| wherein when the safety selector is in the standard semi-automatic position and the trigger member is rearwardly actuated, | When safety selector is in the standard semi-automatic position the trigger member (brown) is rearwardly actuated.<br> |
| and after the hammer pivots rearward to a position where the hammer hook is past the disconnector hook, | The hammer (red) pivots rearward to a position where the hammer hook is past the disconnector hook (orange),<br> |

| '403 Patent Claim 38 | The Atrius Selector |
|---|---|
| rearward pressure on the trigger member must be reduced to permit the trigger member to then be actuated to fire a firearm. | Rearward pressure on the trigger member (brown) must be reduced to permit the trigger member to then be actuated to fire a firearm.<br><br> |

108.    On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '403 patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Infringing Devices while selling products.

109.    On information and belief, Defendant knows or should know that such activities induce others to directly infringe at least claim 38 of the '403 Patent.

110.    On information and belief, Defendant also contributes to the infringement of the '403 Patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendant of the components of the Infringing Devices, such as the cam or

cam lever arm or the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the '403 Patent.

111.    Defendant has engaged in egregious infringement behavior with knowledge of the '403 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the '403 Patent and that the '403 Patent is valid at least through the service of this complaint. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the '403 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the '403 Patent.

112.    By its actions, Defendant has injured Plaintiffs and are liable to Plaintiffs for infringement of the '403 Patent pursuant to 35 U.S.C. § 271.

113.    By its actions, Defendant's infringement of the '403 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

114.    By its actions, Defendant's infringement of the '403 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

115. Defendant's infringement of the '403 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

116. Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

117. Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT VI — FEDERAL TRADEMARK INFRINGEMENT
### 15 U.S.C. § 1114(1)

118. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

119. As described above, Plaintiff RBTM is the owner and Plaintiff Rare Breed is the exclusive licensee of the FRT Marks in connection with firearm triggers.

120. The federal trademark registrations for the FRT Marks as detailed above are in full force and effect. Plaintiff RBTM owns all right, title, and interest in and to these federal trademark registrations.

121. The FRT Marks are inherently distinctive and have acquired significant goodwill in the marketplace through Plaintiffs' continuous and substantially exclusive use of those marks in commerce. As a result of their widespread and continuous use, the FRT

103

Marks have become uniquely associated in the minds of consumers and the trade with Plaintiffs.

122.    The reputation Plaintiffs have built in the FRT Marks is of great value to Plaintiffs.

123.    Plaintiffs' use of and rights in the FRT Marks predate any use by Defendant of FRT.

124.    Defendant is wrongfully using FRT as a source identifier in U.S. commerce in connection with the distribution, advertising, and/or sale of firearm trigger products.

125.    Defendant's use of the FRT Marks was and is without Plaintiffs' consent. Such unauthorized use by Defendant is likely to confuse consumers as to the origin, sponsorship, endorsement, or affiliation of Defendant's products, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

126.    Defendant's unlawful acts have caused and, unless enjoined by this Court pursuant to 15 U.S.C. § 1116, will continue to cause, great harm and irreparable injury to Plaintiffs for which Plaintiffs have no adequate remedy at law, including undermining consumers' association of the FRT Marks with Plaintiffs.

127.    Plaintiffs are entitled to injunctive relief prohibiting Defendant from using the FRT Marks and any mark confusingly similar to the FRT Marks.

128.    Upon information and belief, Defendant has realized unjust profits, gains, and advantages from its unlawful actions, including by making sales under the FRT Marks, and has caused Plaintiffs monetary damage in an amount to be determined at trial.

## COUNT VII — FALSE DESIGNATION OF ORIGIN
### 15 U.S.C. § 1125(A)

129.   Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

130.   As described above, Plaintiff RBTM owns and Plaintiff Rare Breed is the exclusive licensee of the distinctive FRT Marks in connection with firearm triggers through their continuous and substantially exclusive use of the FRT Marks since at least as early as 2020, which is well before any use of FRT by Defendant.

131.   Plaintiffs' common law rights in the FRT Marks predate Defendant's infringing use of FRT and any other confusingly similar name or mark comprised of or containing FRT.

132.   Defendant is using FRT as a source identifier in U.S. commerce in connection with the distribution, advertising, and/or sale of firearm trigger products.

133.   Defendant's actions described above constitute use of a false designation of origin that wrongfully and falsely designates the origin of Defendant's goods and services and is likely to cause confusion or mistake and/or to deceive as to affiliation, connection, or association or as to the origin, sponsorship, or approval of Defendant's goods by Plaintiffs. These actions constitute a false designation of origin in interstate commerce in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

134.   Defendant's unlawful acts, which were committed and continue to be committed with full knowledge of Plaintiffs' prior rights in the FRT Marks, are knowing, willful, and done in bad faith.

135. Defendant's acts have caused and, unless enjoined by this Court pursuant to 15 U.S.C. § 1116, will continue to cause, great harm and irreparable injury to Plaintiffs for which Plaintiffs have no adequate remedy at law, including undermining consumers' association of the FRT Marks with Plaintiffs.

136. Plaintiffs are entitled to injunctive relief prohibiting Defendant from using the FRT Marks or any other mark confusingly similar to the FRT Marks.

137. Upon information and belief, Defendant has realized unjust profits, gains, and advantages from its unlawful actions, including by making sales under the FRT Marks, and has caused Plaintiffs monetary damage in an amount to be determined at trial.

## COUNT VIII — COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

138. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

139. As described above, Plaintiff RBTM owns and Plaintiff Rare Breed is the exclusive licensee of the distinctive FRT Marks in connection with firearm triggers through their continuous use of the marks since at least as early 2020, prior to any use of FRT by Defendant.

140. Plaintiffs' common law rights in the FRT Marks predate Defendant's infringing use of FRT and/or other confusingly similar marks comprised of or containing FRT.

141. Defendant is using FRT as a source identifier in U.S. commerce in connection with the distribution, sale, offering for sale, and advertising of firearm triggers.

142. Defendant's use of FRT was and is without Plaintiffs' consent. Such unauthorized use by Defendant is likely to confuse consumers as to the origin, sponsorship, endorsement, or affiliation of Defendant's goods and services. As such, Defendant's acts constitute trademark infringement and unfair competition under common law.

143. Defendant's unlawful acts, which were committed and continue to be committed with full knowledge of Plaintiffs' prior common law rights in the FRT Marks are knowing, willful, and done in bad faith.

144. Defendant's acts have caused and, unless enjoined by this Court, will continue to cause great harm and irreparable injury to Plaintiffs for which it has no adequate remedy at law, including undermining consumers' association of the FRT Marks with Plaintiffs.

145. Plaintiffs are entitled to injunctive relief prohibiting Defendant from using FRT or any other mark confusingly similar to the FRT Marks.

146. Upon information and belief, Defendant has realized unjust profits, gains, and advantages from its unlawful actions, including by making sales under the FRT mark, and has caused Plaintiffs monetary damage in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendant as follows:

a. Each of the Asserted Patents has been and continues to be infringed by Defendant;

107

b.    Defendant's infringement of each of the Asserted Patents has been, and continues to be, willful;

c.    Each of the Asserted Patents is enforceable and not invalid;

d.    That Defendant willfully infringed Plaintiffs' registered FRT Marks in violation of the Lanham Act, 15 U.S.C. § 1114;

e.    That Defendant committed willful acts of false designation of origin through its unauthorized use of the FRT Marks in violation of the Lanham Act, 15 U.S.C. § 1125(a);

f.    That Defendant engaged in conduct constituting unfair competition under applicable law;

g.    A preliminary injunction enjoining Defendant and its principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from (1) infringement or contributing to the infringement of each of the Asserted Patents during the pendency of this case; (2) using the mark "FRT" (or any similar or derivative term, including any FRT-formative term) (i) in association with firearm triggers or any related products, (ii) in any other manner that creates confusion or is likely to create confusion with Plaintiffs or Plaintiffs' FRT Marks, (iii) that in any way constitutes unfair competition with Plaintiffs; or (3) other such equitable relief as the Court determines is warranted;

h.    A permanent injunction enjoining Defendant and its principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from (1) infringement or contributing to the infringement of each of the Asserted Patents; (2) using the mark

"FRT" (or any similar or derivative term, including any FRT-formative term) (i) in association with firearm triggers or any related products, (ii) in any other manner that creates confusion or is likely to create confusion with Plaintiffs or Plaintiffs' FRT Marks, (iii) that in any way constitutes unfair competition with Plaintiffs; or (3) other such equitable relief as the Court determines is warranted;

i.    Consistent with the above, order Defendant to (1) remove from display any advertisements and marketing, promotional, or sales materials comprising, bearing, or displaying the FRT Marks or any similar or derivative term that infringes or is likely to be confused with the FRT Marks, including any FRT-formative term, including from all Internet webpages and social media accounts within Defendant's custody or control; and (2) deliver to the Court for destruction, or to show proof of destruction of, any and all physical advertisements and marketing, promotional materials, and sales materials comprising, bearing, or displaying the term "FRT" or any similar or derivative term that infringes or is likely to be confused with the FRT Marks, including any FRT-formative term;

j.    An award of damages adequate to compensate Plaintiffs for the infringement of each of the Asserted Patents that has occurred, together with pre-judgment interests and costs, post-judgment interests and costs, and an accounting;

k.    An award of all other damages permitted by 35 U.S.C. § 284 and 15 U.S.C. § 1117(a), including increased damages up to three times the amount of compensatory damages found;

109

l.      An award of all profits received by Defendant from sales and revenues of any kind made as a result of its trademark infringement and unfair competition;

m.      An award of all damages sustained by Plaintiffs as a result of Defendant's infringement and unfair competition, including ascertainable damages, the costs incurred by Plaintiffs for corrective advertising, the costs for this action, and Plaintiffs' reasonable attorneys' fees;

n.      A finding that this action is an exceptional case under 35 U.S.C. § 285 and 15 U.S.C. § 1117, and an award to Plaintiffs of their costs and attorneys' fees incurred in this action; and

o.      Any and all other relief, at law or equity, to which Plaintiffs may show themselves to be entitled or which this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, under Rule 38 of the Federal Rules of Civil Procedure, request a trial by jury of any issues so triable by right.

DATED: July 23, 2026                    Respectfully submitted,

*/s/Zachary A.P. Oubre*
Zachary A.P. Oubre, OBA # 30666
McAFEE & TAFT A Professional Corporation
Eighth Floor, Two Leadership Square
211 North Robinson Ave.
Oklahoma City, OK  73102
(405) 235-9621
(405) 228-7334 (fax)
zach.oubre@mcafeetaft.com

Glenn D. Bellamy (Pro Hac Vice to be filed)
**WOOD HERRON & EVANS LLP**
600 Vine Street, Suite 2800

110

Cincinnati OH 45202
E-mail: gbellamy@whe-law.com
Tel: (513) 707-0243
Fax: (513) 241-6234

Matthew A. Colvin (Pro Hac Vice to be filed)
Texas Bar No. 24087331
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
E-mail: colvin@fr.com
Tel: (214) 747-5070
Fax: (214) 747-2091

*Attorneys for Plaintiffs*
*ABC IP, LLC, and Rare Breed Triggers, Inc.*

111